Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Matthew F. Kennelly | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 01 C 9373 | **DATE** | 5/7/2004 |
| **CASE TITLE** | Roberts vs. County of Cook | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
    ☐ FRCP4(m)  ☐ Local Rule 41.1  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] For the reasons set forth in open court, the Court grants defendants' motion for a new trial, but denies their motion of amend the judgment (77).

(11) ■ [For further detail see order attached to the original minute order.]

| | | | | Document Number |
|---|---|---|---|---|
| | No notices required, advised in open court. | | | |
| | No notices required. | | number of notices | |
| | Notices mailed by judge's staff. | | MAY 12 2004 | |
| | Notified counsel by telephone. | | date docketed | |
| ✓ | Docketing to mail notices. | | | 89 |
| | Mail AO 450 form. | | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | | |
| OR | courtroom deputy's initials | Date/time received in central Clerk's Office | date mailed notice / mailing deputy initials | |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

DOCKETED
MAY 1 2 2004

SHARLA ROBERTS,      )
                     )
    Plaintiff,       )
                     )
v.                   )   Case No. 01 C 9373
                     )
COUNTY OF COOK, COOK COUNTY )
OFFICE OF THE INSPECTOR )
GENERAL, and TIMOTHY FLICK, )
individually and in his official capacity, )
                     )
    Defendants.      )

## MEMORANDUM OPINION AND ORDER

MATTHEW F. KENNELLY, District Judge:

Sharla Roberts sued her employer, the County of Cook, alleging sexual harassment, sex discrimination and retaliation in violation of Title VII and intentional infliction of emotional distress. She also sued her supervisor, Timothy Flick, the director of Cook County's Office of the Inspector General, alleging a denial of equal protection in violation of 42 U.S.C. § 1983 and intentional infliction of emotional distress. The Court held a jury trial starting on January 13, 2004, and the jury returned a verdict for Roberts on all but her sex discrimination claim against Cook County. The jury awarded her $100,000 in compensatory damages as well as $400,000 in punitive damages against Flick on the § 1983 claim.

Defendants argue they are entitled to a new trial because an evidentiary ruling was in error. In the alternative, they request judgment notwithstanding the verdict on all counts. For the reasons stated in open court, Defendants' motion for new trial is granted. The Court will briefly

1



address Defendants' arguments for judgment notwithstanding the verdict to provide guidance for the retrial.

## Discussion

We first note the appropriate standard for reviewing a motion for judgment notwithstanding the verdict or as a matter of law. When presented with such a motion, the Court must "examine the evidence presented, combined with any reasonably drawn inferences, and determine whether that evidence sufficiently supports the verdict when viewed in the light most favorable to the non-moving party." *Tincher v. Wal-Mart Stores, Inc.*, 118 F.3d 1125, 1129 (7th Cir. 1997) (citation omitted). The Court is limited to "assessing whether no rational jury could have found for the plaintiff." *Emmel v. Coca-Cola Bottling Co.*, 95 F.3d 627, 630 (7th Cir. 1996) (citation omitted). "A motion for judgment as a matter of law should be granted only when there can be but one conclusion from the evidence." *Id.* at 636 (citation omitted). The Court applies this standard in reviewing Defendants' arguments for judgment on each count.

*1.   Sexual harassment*

The County argues it is entitled to judgment as a matter of law on Roberts' hostile work environment claim because Roberts did not suffer a tangible employment action and failed to rebut the County's *Ellerth/Faragher* affirmative defense. The standard of employer liability for sexual harassment by a supervisor depends on whether the plaintiff suffered a tangible employment action.

> An employer is subject to vicarious liability to a victimized employee for an actionable hostile environment created by a supervisor with immediate (or successively higher) authority over the employee. When no tangible employment action is taken, a defending employer may raise an affirmative defense to liability or damages, subject to proof by a preponderance of the evidence.

2

*Faragher v. City of Boca Raton*, 524 U.S. 775, 807 (1998). The crux of the County's position is that a substantial reduction in job responsibilities does not constitute a tangible employment action as a matter of law. The Court rejects this contention.

In *Ellerth* the Supreme Court defined a tangible employment action as "a significant change in employment status, such as hiring, firing, failing to promote, *reassignment with significantly different responsibilities*, or a decision causing a significant change in benefits." *Burlington Industries, Inc. v. Ellerth*, 524 U.S. 742, 761 (1998) (emphasis added). The EEOC has elaborated on this definition, explaining that "significantly changing an individual's duties in his or her existing job constitutes a tangible employment action regardless of whether the individual retains the same salary and benefits." EEOC, Enforcement Guidance: Vicarious Employer Liability For Unlawful Harassment by Supervisors, 1999 WL 33305874, at * 5 (June 18, 1999).

Just last month, the Seventh Circuit stated that a materially adverse employment action may occur when "'the employee is not moved to a different job or the skill requirements of his present job altered, but the *conditions* in which he works are changed in a way that subjects him to a humiliating, degrading, unsafe, unhealthful, or otherwise significantly negative alternation in his workplace environment – an alternation that can fairly be characterized as objectively creating a hardship, the classic case being that of the employee whose desk is moved into a closet." *Tart v. Illinois Power Co.*, – F.3d – , 2004 WL 877580, at *12 (7th Cir. April 26, 2004) (emphasis in original; quoting *Herrnreiter v. Chicago Housing Authority*, 315 F.3d 742, 744 (7th Cir. 2002)). The court noted that "a materially adverse change may be indicated by, among other things, 'significantly diminished material responsibilities or other indices that might be unique to

3

a particular situation.'" *Id.*, at *11 (quoting *Crady v. Liberty National Bank & Trust Co. of Indiana*, 993 F.2d 132, 136 (7th Cir. 1993)). Accordingly, the court found the plaintiffs suffered adverse employment actions when their "reassigned jobs were objectively inferior; they involved far less skill and significantly harsher working conditions than the plaintiffs' prior positions." *Id.*, at *10.

Roberts presented evidence that she suffered what amounted to a "reassignment with significantly different responsibilities" under *Ellerth*. She testified at trial that after she refused Flick's sexual advances, he substantially reduced her job responsibilities. Roberts admitted that Flick did not decrease her salary, but she equated her reduced job duties to that of a "glorified cleaning lady." "Sometimes job responsibilities can be quite intellectually stimulating, but other duties can be routine at best." *Dahm v. Flynn*, 60 F.3d 253, 257 (7th Cir. 1994). The jury reasonably could have found that Flick reduced Roberts' responsibilities to only the most menial of duties. In a factually similar case, the Seventh Circuit ruled that such a reduction in responsibilities could constitute an adverse employment action. The plaintiff in *Hoffman-Dombrowski v. Arlington International Racecourse, Inc.*, 254 F.3d 644 (7th Cir. 2001), claimed that she suffered an adverse employment action when her employer transferred her and decreased her responsibilities from preparing the budget and payroll and staffing hundreds of clerks to emptying lottery machines and scheduling one part-time clerk and four full-time clerks. *Id.* at 649. The Seventh Circuit found that even though the transfer did not affect her title or compensation, "a rational jury could find that her responsibilities were diminished to such an extent that she suffered an adverse employment action." *Id.* at 651. Following this case law and viewing the evidence in the light most favorable to Roberts, as we must on a motion for

4

judgment as a matter of law, the Court finds a rational jury could find that Roberts suffered a tangible employment action and, accordingly, the County was not entitled to the *Ellerth/Faragher* affirmative defense.

2.  *Retaliation*

The County argues that it is entitled to judgment as a matter of law on Roberts' retaliation claim because she failed to prove that she suffered an adverse employment action after complaining about Flick's behavior to Mark Kilgallon of the Cook County Bureau of Human Resources. To prove a claim of retaliation, the plaintiff must show that she "engaged in protected activity . . . and as a result suffered the adverse employment action of which [s]he complains." *Stone v. City of Indianapolis Public Utilities Division*, 281 F.3d 640, 644 (7th Cir. 2002). The County concedes that Roberts' complaint to Kilgallon constituted protected activity, but it argues that the transfer that resulted was not an adverse employment action. In her response, Roberts does not contend that she suffered an adverse employment action when she was transferred from the Inspector General's office to another department after filing her complaint. Rather, she argues that each time she rebuffed Flick's advances she engaged in protected activity and that the reduction in responsibilities that resulted constituted adverse employment action. The jury's verdict must stand if either Roberts' transfer was an actionable harm she suffered as a result of her complaints to Kilgallon or Roberts' refusal of Flick's advances was protected activity for which her job responsibilities were significantly reduced. Because the Court has already determined that substantial reductions in job responsibilities can constitute an adverse employment action, and Defendants concede that Roberts' complaints to Kilgallon were protected activity, a reasonable jury could have found for Roberts if (1) Roberts'

5

transfer from the Inspector General's office – and away from Flick – constituted an adverse action; or (2) resisting the sexual advances of a supervisor constitutes protected activity.

The County argues that Roberts cannot claim that she was retaliated against for complaining to Kilgallon unless her lateral transfer constituted an adverse employment action. It relies on a 2001 Seventh Circuit decision stating that "a lateral transfer without a loss in benefits does not constitute an adverse employment action." *Stutler v. Illinois Department of Corrections*, 263 F.3d 698, 702 (7th Cir. 2001) (citations omitted). It is unclear whether *Stutler* is still good law. A year after *Stutler* was decided, the Seventh Circuit stated that "[w]e do not mean to suggest . . . that retaliation, to be actionable under Title VII (or other statutes), has to involve an adverse employment action. It does not." *Herrnreiter*, 315 F.3d at 745. The court declined to determine whether an act of retaliation that "*does* take the form of an employment action" must be "as severe as would be required if the action were charged as discrimination rather than as retaliation." *Id.* at 746 (emphasis in original). But more recently, in *Johnson v. Cambridge Industries, Inc.*, the Seventh Circuit stated that even if a "more generous standard" governs retaliation cases, "the employee must complain of some action on the employer's part that causes her to suffer a real harm." 325 F.3d 892, 902 (7th Cir. 2003). The Court need not wade further into these murky waters, however, because Roberts' alternative theory is sufficient to sustain her retaliation claim.

Roberts argues that Flick retaliated against her by reducing her job responsibilities when she engaged in the protected activity of rebuffing his sexual advances. Because we have already found under the comparatively higher standard of harm that applies to discrimination cases that a substantial reduction in job responsibilities may constitute an adverse employment action, the

viability of Roberts' second theory of retaliation does not depend on the proper measure of harm in retaliation cases. Rather, the viability of Roberts' theory depends on whether refusals of sexual advances constitute protected activity. As Roberts notes, the Seventh Circuit has declined to decide whether the rejection of sexual advances constitutes "a statutorily protected activity within the meaning of Title VII." *Murray v. Chicago Transit Authority*, 252 F.3d 880, 890 (7th Cir. 2001). And it appears no other Courts of Appeals have addressed the issue. *Little v. National Broadcasting Co.*, 210 F. Supp. 2d 330, 385 (S.D.N.Y. 2002) (citing Second, Third and Seventh Circuit cases declining to decide whether a rejection of sexual advances is protected activity). The Eighth Circuit has considered a claim of retaliation for refusal of sexual advances, but it did not discuss whether refusal of sexual advances constituted protected activity because it found the retaliation claim deficient on other grounds. *See Henthorn v. Capitol Communications, Inc.*, 359 F.3d 1021, 1028-29 (8th Cir. 2004).

District judges are divided on the issue. Several judges of this Court have stated that the refusal of sexual advances does not constitute protected activity, *see Jones v. County of Cook*, No. 01 C 9876, 2002 WL 1611606, at * 4 (N.D. Ill. July 17, 2002); *Bowers v. Radiological Society of North America, Inc.*, 57 F. Supp. 2d 594, 599 (N.D. Ill. 1999); *Speer v. Rand McNally & Co.*, No. 95 C 6269, 1996 WL 667810, at *8 n.4 (N.D. Ill. Nov. 15, 1996), *Finley v. Rodman & Renshaw, Inc.*, No. 93 C 5504, 1993 WL 512608, at *3 (N.D. Ill. 1993), as has one judge in the District of Maryland, *Rachel-Smith v. FTData, Inc.*, 247 F. Supp. 2d 734, 748-49 (D. Md. 2003), and three in New York. *See Fitzgerald v. Henderson*, 36 F. Supp. 2d 490, 499 (N.D.N.Y. 1998), *aff'd in part, rev'd in part on other grounds*, 251 F.3d 345 (2d Cir. 2001); *Rashid v. Beth Israel Medical Center*, No. 96 Civ. 1833, 1998 WL 689931, at *2 (S.D.N.Y. Oct. 2, 1998); *Del*

7

*Castillo v. Pathmark Stores, Inc.*, 941 F. Supp. 437, 438-39 (S.D.N.Y. 1996). But there is an equal number of district court judges who have found the refusal of sexual advances to constitute protected activity. *See Little*, 210 F. Supp. 2d at 385-86; *Black v. City & County of Honolulu*, 112 F. Supp. 2d 1041, 1049 (D. Haw. 2000); *Farrell v. Planters Lifesavers Co.*, 22 F. Supp. 2d 372, 392 (D.N.J. 1998), *aff'd in part, rev'd in part on other grounds*, 206 F.3d 271 (3d Cir. 2000); *Fleming v. South Carolina Department of Corrections*, 952 F. Supp. 283, 288 (D.S.C. 1996); *Armbruster v. Epstein*, No. Civ. A 96-CV-1059, 1996 WL 289991, at *3 (E.D. Pa. May 31, 1996); *EEOC v. Domino's Pizza*, 909 F. Supp. 1529, 1536 (M.D. Fla. 1995); *Burrell v. City University of New York*, 894 F. Supp. 750, 761 (S.D.N.Y. 1995); and *Boyd v. James S. Hayes Living Health Care Agency, Inc.*, 671 F. Supp. 1155, 1167 (W.D. Tenn. 1987).

The Court agrees with those district judges who have found that refusing sexual advances is protected activity under Title VII. Title VII makes it unlawful "for an employer to discriminate against any of his employees . . . because *he has opposed any practice made an unlawful employment practice by this subchapter*, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter." 42 U.S.C. § 2000e-3(a) (emphasis added). Sexual harassment is clearly an unlawful employment practice under Title VII: the Supreme Court has read 42 U.S.C. § 2000e-2(a)(1) as prohibiting "sexual harassment so severe or pervasive as to alter the conditions of [the victim's] employment and create an abusive working environment." *Faragher*, 524 U.S. at 786 (internal quotation marks and citation omitted). Opposing sexually harassing behavior constitutes "oppos[ing] any practice made an unlawful employment practice" by Title VII, and accordingly it is activity protected by § 2000e-3(a). This comports with the purpose of Title VII's anti-retaliation

8

provision. The victim of harassment should not fear retaliation if she resists sexually predatory behavior by colleagues or supervisors. *See Armbruster*, 1996 WL 289991, at *3 ("[R]efusing sexual advances itself should be viewed as protected conduct under anti-discrimination law, for which employees should not be made to fear retaliation.").

Viewing the evidence in the light most favorable to Roberts, a reasonable jury could find that Roberts repeatedly resisted Flick's sexually harassing behavior and that, as a result, Flick substantially reduced her job responsibilities. Therefore, the County is not entitled to judgment as a matter of law on Roberts' retaliation claim.

*3.     Section 1983*

There is no question that "[s]exual harassment of female employees by a state employer constitutes sex discrimination for purposes of the equal protection clause of the fourteenth amendment." *Bohen v. City of East Chicago, Indiana*, 799 F.2d 1180, 1185 (7th Cir. 1986). As such, a local governmental employee like Roberts can sue for sexual harassment under § 1983. *See, e.g., Walker v. Taylorville Correctional Center*, 129 F.3d 410, 414 (7th Cir. 1997) (finding prison inmate had stated a claim for sexual harassment under § 1983). Flick argues that he is entitled to judgment as a matter of law on Roberts' § 1983 claim because she failed to prove that he acted under color of law. Section 1983 states that

> [e]very person who, under color of [law] . . . subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

42 U.S.C. § 1983. Flick essentially argues that because a private employer could sexually harass a subordinate the way the jury found he harassed Roberts, he must not have been acting under

9

color of law. The Court disagrees.

Harassment by a governmental supervisor of a subordinate employee on the job constitutes a violation of § 1983 regardless of whether a private employee could have engaged in the same type of harassing conduct. Liability under § 1983 for harassment turns on whether Flick engaged in the harassing conduct in his official capacity as Roberts' supervisor and whether he had access to her by virtue of his government position. *Walker*, 129 F.3d at 413-14. For example, in *Annis v. County of Westchester*, 36 F.3d 251, 254 (2d Cir. 1994), the court found that "[t]here can be no question" that the plaintiff's supervisors were amenable to suit for harassing and discriminating against the plaintiff "inasmuch as they were conducting themselves as supervisors for a public employer and thus were acting under color of state law." Flick was Roberts' supervisor and had day-to-day contact with her because she worked for him in his capacity as Inspector General. For this reason, Flick's alleged conduct was under color of law for purposes of § 1983. He is not entitled to judgment as a matter of law.

*4.    Intentional infliction of emotional distress*

Defendants argue they are entitled to judgment on Roberts' intentional infliction of emotional distress (IIED) claim because it is preempted by the Illinois Human Rights Act (IHRA). The Court rejected an identical argument in *Temores v. SG Cowen*, 289 F. Supp. 2d 996, 1006-07 (N.D. Ill. 2003). We quote the two paragraphs of that decision explaining why the IHRA does not preempt an IIED claim:

> The Illinois Supreme Court has held that common law claims are preempted if they are "inextricably linked to a civil rights violation such that there is no independent basis for the action apart from the [IHRA] itself." *Maksimovic v. Tsogalis*, 177 Ill. 2d 511, 517, 687 N.E.2d 21, 23 (1997). The IHRA does not bar common law tort claims simply because they are "factually related to incidents of

10

sexual harassment," *Id.* at 516, 687 N.E.2d at 23; rather the question is whether the common law claim is premised upon legal obligations and prohibitions that exist as a matter of Illinois law only under the Act and have no other independent foundation. *See, e.g., Bartoli v. Applebee's Restaurant,* No. 00 C 5954, 2001 WL 40798, at *2 (N.D. Ill. Jan. 17, 2001). If the "plaintiff has established a basis for imposing liability on the defendant independent of any statutory cause of action under the Act," the claims are not preempted by the IHRA. *Maksimovic,* 177 Ill. 2d at 514, 687 N.E.2d at 22.

The Illinois Supreme Court has specifically and unequivocally held that assault, battery and false imprisonment "are long-recognized tort actions which exist wholly separate and apart from a cause of action for sexual harassment under the [IHRA]" and thus are not preempted by the state statute. *Id.* at 517, 687 N.E. 2d at 23. The Court concludes that the same is true of Temores' IIED claim. Such claims have been recognized by the Illinois courts as independent actions since long before the adoption of the IHRA. *See Knierim v. Izzo,* 22 Ill. 2d 73, 174 N.E.2d 157 (1961). The Court is cognizant of the fact that the Seventh Circuit recently found an IIED claim against an employer that "depend[ed] on allegations of sexual harassment" to be preempted by the IHRA. *Quantock v. Shared Mktg. Services, Inc.,* 312 F.3d 899, 905 (7th Cir. 2002). But in this regard, the final word on whether an Illinois statute preempts an Illinois claim comes from Illinois' highest court, which in *Maksimovic* rejected an analysis based on the factual relationship between a claim and the provisions of the IHRA in favor of an analysis based on the source of the legal duty underlying the claim.

*Temores,* 289 F. Supp. 2d at 1006-07. Because Roberts' IIED claim is not based on the violation of a legal duty created by the IHRA, Defendants are not entitled to judgment as a matter of law on the IIED claim.

### Conclusion

For the reasons stated above and in open court, the Court grants Defendants' motion for a new trial, but denies their motion to amend the judgment [docket # 77].

_____
MATTHEW F. KENNELLY
United States District Judge

Date: May 7, 2004

11